UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

Case No.:

NICHOLAS MARCIAL,

                                     Plaintiff,

                -against-

THE CITY OF NEW YORK; MAYOR OF THE CITY OF
NEW YORK ERIC ADAMS; NYPD POLICE
COMMISSIONER KEECHANT SEWELL; PO
JONATHAN GALINDO-SANCHEZ (BADGE #23267,
TAX ID #964005); PO RAMSES CRUZ (BADGE #6083,
TAX ID # #918899); PO MICHAEL CRICHLOW
(BADGE #20395); PO JUAN GRULLON (BADGE
#6446, TAX ID #970571); PO TYLER HOWE (BADGE
#14840, TAX ID # TAX #961822); PO MICHAL
JALBRZYKOWSKI (BADGE # 21736, TAX ID
#959710); PO ASHLEY ORDONEZ (BADGE #9178); PO
CHRYSTINE PETERSON (BADGE #5835); PO LUIGI
SCALICI (BADGE #12555); and NYPD MEMBERS
JOHN OR JANE DOE #1-5;

                                 Defendants.

--------------------------------------------------------------------X

**VERIFIED COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, NICHOLAS MARCIAL, by his attorneys, KAISHIAN & MORTAZAVI LLC, by MARYANNE K. KAISHIAN, ESQ., an attorney duly licensed to practice before the United States District Court for the Eastern District of New York, hereby complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.     On February 10, 2023, Defendant New York City Police Department (NYPD) Members violated the rights of Plaintiff, Nicholas Marcial ("Mr. Marcial" or "Plaintiff"), then

1

twenty (20) years old, by subjecting him to a warrantless, forcible anal cavity search and other violations of his civil rights following a traffic stop in Kings County.

2.      Defendants then knowingly fabricated evidence by forwarding false information likely to influence a jury to the prosecution, depriving Mr. Marcial of his freedom and causing additional damages. The case against Mr. Marcial terminated in his favor with a dismissal of all charges on or about April 17, 2023.

3.      Mr. Marcial now brings the instant case before this Court for, *inter alia*, unreasonable search and seizure, excessive force, interference with fair trial rights, and fabrication of evidence.

## PARTIES

4.      Plaintiff, NICHOLAS MARCIAL, is, and was at all relevant times, a resident of Kings County in the City and State of New York.

5.      At all relevant times mentioned herein, Defendant CITY OF NEW YORK ("Defendant City" or "New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

6.      Defendant Mayor of the City of New York ERIC ADAMS was at all times relevant to this Complaint the Mayor of New York City. As Mayor, Defendant Adams, at all relevant times, was an elected officer and the "chief executive officer of the city," New York City Charter § 3, and had final authority to appoint and/or remove any NYPD employees and agent, including the New York City Police Commissioner. He is sued individually and in his official capacity.

7.      Defendant NYPD Commissioner KEECHANT SEWELL was at all times relevant to this Complaint the Police Commissioner of the NYPD. As Police Commissioner, Defendant

Sewell, personally and/or through her authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to NYPD officers' performance of their duties, and constituted a City policymaker for whom the City is liable. She is sued individually and in her official capacity.

8.     Defendants NYPD police officers JONATHAN GALINDO-SANCHEZ[1] (BADGE # 23267, TAX ID), PO RAMSES CRUZ (BADGE #6083, TAX ID # #918899); PO MICHAEL CRICHLOW (BADGE #20395; PO JUAN GRULLON (BADGE #6446, TAX ID #970571); PO TYLER HOWE (BADGE #14840, TAX ID # TAX #961822); PO MICHAL JALBRZYKOWSKI (BADGE # 21736, TAX ID #959710); PO ASHLEY ORDONEZ (BADGE #9178); PO CHRYSTINE PETERSON (BADGE #5835); PO LUIGI SCALICI (BADGE #12555), at all relevant times, were employed by the City of New York as police officers with the NYPD and were assigned to the NYPD's 90th Precinct Kings County. These Defendants are sued individually and in their official capacity.

9.     The true names and identities of DEFENDANT NYPD MEMBERS JOHN OR JANE DOE #1 – 5 are currently unknown to Plaintiff, and these Defendants are fictitiously assigned the name(s) "Defendant NYPD Does # 1 – 5" for the purposes of the instant Complaint. At all times hereinafter mentioned, Defendant NYPD Does # 1 – 5 were employed by the City of New York as members of the NYPD. These Defendants are sued individually and in their official capacity.

10.     At least one Defendant NYPD Does # 1 – 5 were employed as supervisors within the NYPD and were responsible for day-to-day personnel and administrative decisions,

---

[1] Defendant Galindo-Sanchez is seen in body-worn camera footage wearing a badge identifying him as "Galindo," but NYPD records indicate that the individual with this Defendant's tax and badge number is correctly identified as Galindo-Sanchez.

implementing NYPD and Defendant City's policies, supervising and/or training NYPD police officers, including all named Defendants, and reporting the misconduct of their subordinates for disciplinary purposes. These Defendants are sued individually and in their official capacity.

11.     At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12.     Each and every act and omission by the individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

13.     The individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

14.     All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

15.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

16.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the

NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

17.     The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, cloaked with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

18.     Each individual Defendant is sued in her or his individual and official capacities.

## JURISDICTION and CONDITIONS PRECEDENT

19.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

20.     Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York, where the actions complained of herein occurred.

21.     Plaintiff timely served Notices of Claim on the municipal Defendant on and complied with all conditions precedent to commencing an action under state law.

22.     The damages amount sought by Plaintiff exceeds the jurisdiction of all lower courts.

23.     Defendant City of New York conducted an examination of Mr. Marcial pursuant to GML §50-H on June 6, 2023.

24.     At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

25.     This action was initiated within one year and ninety days of the accrual of all Plaintiff's claims pursuant to New York State law, and within three years of the accrual of all claims brought pursuant to New York City Admin. Code Title 8, Ch. 8 § 8-802, *et seq.*, 42 U.S.C. § 1983, and Federal law.

## STATEMENT OF FACTS

26.     At the time of the events giving rise to this Complaint, Plaintiff Nicholas Marcial was a 20-year-old resident of Kings County. Plaintiff has no criminal record.

27.     Prior to Defendants' assault, Mr. Marcial was the lawful front passenger in a vehicle stopped by at least six NYPD Defendants, believed to include Defendants Galindo-Sanchez, Cruz, Crichlow, Grullon, Howe, Jalbrzykowski, Ordonez, Peterson, Scalici, and NYPD Defendant Does # 1 – 5 (collectively "NYPD Defendants") in Kings County, City and State of New York. Defendants claimed the driver committed a minor traffic infraction.

28.     At least one individual among NYPD Defendants ordered all occupants to exit the vehicle. Plaintiff complied.

29.     At all times relevant to this Complaint, Mr. Marcial complied with all lawful orders issued by NYPD Defendants.

30.     At least two individuals among these NYPD Defendants, including Defendant Crichlow, searched Mr. Marcial at the scene of this stop and determined he was not in possession of any weapons, nor was he alleged to have committed a crime.

31.     Nevertheless, Defendants transported Mr. Marcial to the NYPD's 90th Precinct.

32.     Present at the 90th Precinct were Defendants Galindo-Sanchez, Cruz, Crichlow, Grullon, Howe, Jalbrzykowski, Ordonez, Peterson, Scalici, and NYPD Defendant Does # 1 – 5.

33.     Defendants Cruz, Crichlow, Scalici, Howe, and Grullon searched Mr. Marcial's person and property again on at least two additional occasions, finding no contraband.

34.     Mr. Marcial was then brought to an interrogation room where two individuals, believed to be Defendant Jalbrzykowski and Defendant Doe # 1. Defendant Doe # 1 appeared to be a Latin woman with curly red hair. Though the audio quality is poor, Defendant Doe # 1 can be

heard on the interrogation room recording introducing herself, and she is believed to identify herself as "Police Officer Rivera."

35.     In response to these two Defendants administering *Miranda* warnings, Mr. Marcial stated only that he understood his rights, and that he chose to invoke his right to counsel and his right to remain silent.

36.     Having failed to elicit any information suggesting that Mr. Marcial had committed a crime, Defendants still lacked probable cause for Mr. Marcial's arrest and ongoing detention.

37.     At least two Defendants, believed to include Defendant Jalbrzykowski, then escorted Mr. Marcial to the area of the precinct where the holding cells were located.

38.     Upon arrival to this location, Defendant Galindo-Sanchez conducted yet another search of Mr. Marcial. This time, Defendant Galindo-Sanchez ordered Mr. Marcial to remove his pants and place his hands on the wall. Mr. Marcial did so. Defendant Galindo-Sanchez then reached inside the waistband of Mr. Marcial's boxer shorts and located a clear bag containing pills.

39.     At no time did Mr. Marcial refuse or resist Defendants' lawful orders. Still, Defendants Galindo-Sanchez, along with Defendants Grullon, Howe, Scalici, and Does # 3 – 5, threw Mr. Marcial to the ground.

40.     NYPD Defendants all participated in and/or were present for this assault.  No Defendants intervened.

41.     Defendants Galindo-Sanchez, Scalici, Grullon, and Howe then struck Mr. Marcial repeatedly, twisted his arms, applied overly tight handcuffs, and dragged him into a nearby precinct bathroom while detained witnesses pleaded with Defendants to stop their assault.

42.     Upon information and belief, these Defendants intentionally dragged Mr. Marcial to the bathroom because it is an area where there are no mounted precinct cameras.[2] Footage reveals that NYPD Defendants also deactivated their body-worn cameras at the same time.[3]

43.     Once inside the bathroom, at least four of these NYPD Defendants, including Defendant Galindo-Sanchez, pinned Mr. Marcial to the ground and forcibly removed his underwear.

44.     Defendant Galindo-Sanchez further assaulted Mr. Marcial by conducting a forcible anal cavity search. No contraband was recovered.

45.     Following the assault and manual cavity search conducted in the precinct bathroom, Defendants forcibly dragged Mr. Marcial back to a holding cell within the precinct.

46.     Mr. Marcial repeatedly requested for the overly tight metal handcuffs to be loosened. NYPD Defendants refused to do so.

47.     Mr. Marcial repeatedly requested medical care for his serious injuries. NYPD Defendants refused to provide him with the same, thus exacerbating his injuries, pain, and suffering.

48.     At no time did any NYPD Defendants intervene in the unlawful conduct of any other Defendants on Mr. Marcial's behalf.

49.     Defendants force Mr. Marcial to remain in NYPD custody for approximately 24 hours before transporting him to Kings County Criminal Court on February 11, 2023, where he was arraigned on criminal charges including Criminal Possession of a Controlled Substance.

---

[2] In response to a subpoena filed by Mr. Marcial's Defense Counsel, the NYPD's Legal Bureau indicated that all precinct video from the date of the incident had been deleted.
[3] The Kings County District Attorney's Office provided body-worn camera footage in response Plaintiff's FOIL request on April 9, 2024. The NYPD's FOIL Unit provided a response date of March 29, 2024. To date, no records have been disclosed by the Department.

50.     Defendants, including Defendant Galindo-Sanchez, fabricated evidence by, *inter alia*: falsely representing the circumstances of Mr. Marcial's arrest to prosecutors to suggest cause permitting a lawful seizure; by falsely representing the cause for Defendants' approach of Mr. Marcial; by providing fabricated evidence to prosecutors in the Early Case Assessment Bureau of the Kings County DA's Office; by falsely informing prosecutors that the search of Mr. Marcial had been lawful; by falsely denying Defendants' utilization of excessive force; by fabricating Defendants' narrative of Mr. Marcial's conduct before, during, and after his approach by Defendants, including in ways constitutionally tailored to suggest unlawful conduct by Plaintiff and to justify Defendants' unlawful conduct; by failing to disclose and/or preserve precinct video; and by otherwise knowingly presenting false evidence and information likely to influence a jury.

51.     Mr. Marcial was forced to return to Kings County Supreme Court on approximately one (1) occasion during the pendency of the criminal matter against him.

52.     Thereafter, on or about April 17, 2023, the criminal charges against Mr. Marcial terminated in his favor with the dismissal of all charges.

### *Damages*

53.     Defendants' conduct caused Mr. Marcial serious physical injuries, including pain and suffering, bleeding and pain to his anal cavity, loss of mobility to his wrists and shoulders, lacerations to his face, bruising to his face, wrists, and body, and additional physical damages. The full extent of Mr. Marcial's physical injuries is not yet known.

54.     Defendants' conduct further caused Mr. Marcial serious psychological injuries, including emotional anguish, humiliation, anxiety, post-traumatic stress, difficulty sleeping, fear of public spaces, fear of leaving his home, loss of enjoyment, and additional damages. The full extent of Mr. Marcial's emotional injuries is not yet known.

55.    Defendants' conduct subjected Mr. Marcial to lost income, including forcing Mr. Marcial to lose his job as a food delivery driver.

56.    Defendants deprived Mr. Marcial of his property, including a cellphone, and forced him to expend costs, including on a replacement phone as well as transportation to and from his court appearances.

57.    The full extent of Mr. Marcial's injuries and damages is not yet known, and their effects are ongoing.

<u>**FIRST CLAIM FOR RELIEF**</u>

**Unlawful Search and Seizure**
***Against All Defendants Pursuant to <u>42 U.S.C. § 1983</u> for Defendants' Violations of Plaintiff's Rights Under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution***

58.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

59.    Defendants' searches and seizures of Plaintiff's person and property, both those taking place at the scene of the traffic stop and within the 90th Precinct, were unreasonable.

60.    Plaintiff was the passenger of a vehicle and was not believed to have committed a crime at the time he was searched and seized by Defendants.

61.    Defendants' searches and seizure of Plaintiff were conducted without a warrant and without Plaintiff's consent.

62.    Defendants conducted a visual cavity search despite the absence of specific, articulable factual basis supporting a reasonable suspicion to believe Plaintiff secreted evidence inside a body cavity.

63.    Defendants then conducted a manual cavity search despite the absence of reasonable suspicion.

64.     Defendants conducted this manual cavity search in violation of medical protocol and in the absence of hygienic conditions, as this violation was carried out on the floor of a 90th precinct bathroom, in view and earshot of witnesses, and as a punitive measure intended to punish and humiliate Mr. Marcial.

65.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; interfered with his right to security and privacy; and/or otherwise damaged and injured Plaintiff.

66.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**SECOND CLAIM FOR RELIEF**

**The Right of Security Against Unreasonable Search and Seizure and Against Excessive Force, Regardless of Whether Such Force Is Used in Connection with a Search or Seizure** ***Against Defendant City and NYPD Defendants Pursuant to*** *New York City Administrative Code Title 8, Chapter 8 (§ 8-801, **et seq.)***

67.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

68.     As described above, the Defendants violated Plaintiff's right to be free from "unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure."

69.     Pursuant to NYC Admin. Code Title 8, Chapter 8, §§ 8-801 through 8-809 of the New York City Civil Rights Law, Plaintiff maintains a private right of action against the individual NYPD Defendants and their employer, Defendant City, for this conduct.

70.     The NYPD Defendants, including Defendant Galindo-Sanchez and Defendant NYPD Does # 1-5, as employees of the Defendant City's police department, are "covered individuals" as defined in § 8-801 of this Chapter.

71.     Pursuant to § 8-802, *et seq.*, NYPD Defendants and their employer, including Defendant City, are liable to Plaintiff for the conduct described herein.

72.     Pursuant to § 8-803, Plaintiff's claims under common law or pursuant to any other law or rule are not limited or abrogated by his invocation of this statute.

73.     The remedies provided by this chapter are in addition to any other remedies that may be provided for under common law or pursuant to any other law or rule.

74.     Pursuant to § 8-804, Defendants may not invoke the defense of qualified immunity to avoid liability for this cause of action.

75.     Pursuant to § 8-806, Plaintiff is entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining the Defendants from engaging in further violative conduct.

### **THIRD CLAIM FOR RELIEF**

**Excessive Force**
*Against Defendants Galindo-Sanchez, Crichlow, Grullon, Howe, Scalici, and Does Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

76.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

77.     Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

78.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

79.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

### Violations of Plaintiff's Due Process Rights
*Against All Defendants Pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution*

80.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

81.     Defendants City, Defendant Adams, and Defendant Sewell designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in seizing Plaintiff and subjected Plaintiff to the violations of his Due Process rights described elsewhere herein.

82.     Defendants collectively and individually denied and/or frustrated Plaintiff's Due Process rights and deprived Plaintiff of liberty and property without due process of law.

83.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

84.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability
*Against Defendants City, Adams, and Sewell Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiffs'*

### *Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution*

85.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

86.     The Policymaker Defendants above were responsible for implementing and enforcing policies and procedures on behalf of the Defendant City of New York.

87.     The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to: policies of unlawful searches and seizures; excessive uses of force; and unlawful street and/or vehicular stops, searches, and seizures.

88.     Defendant City and its NYPD have a well-documented history of fostering and endorsing the conduct complained of herein within the Department more broadly. This conduct includes, but is not limited to, impermissible and abusive strip and/or cavity searches of individuals in NYPD custody.

89.     Policymakers and supervisors within the NYPD have not only failed to discipline members credibly accused of conducting improper strip and/or cavity searches but have repeatedly promoted these individuals to positions where their responsibilities include training and supervising newer members.

90.     For example, former NYPD Assistant Chief Christopher McCormack was formally accused by at least fifteen (15) people of conducting violent strip and cavity searches, frequently in public places, prior to his promotion to Assistant Chief of Detectives.[4] McCormack retired in September 2023 and was a top official in the Department at the time of Mr. Marcial's assault.

---

[4] *See* Joaquin Sapien and Topher Sanders, "Over a Dozen Black and Latino Men Accused a Cop of Humiliating, Invasive Strip Searches. The NYPD Kept Promoting Him." PROPUBLICA, Sept. 10, 2020, *available at* https://www.propublica.org/article/over-a-dozen-black-and-latino-men-accused-a-cop-of-humiliating-invasive-strip-searches-the-nypd-kept-promoting-him (last visited April 25, 2024). In another high-profile example, former NYPD member Daniel Pantaleo publicly strip searched and groped at least two individuals before he killed Eric Garner in 2014. Pantaleo remained on payroll until 2019 and was never disciplined for those abuses.

91.     All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

   a.   Formal policies, rules, and procedures of Defendant City;

   b.   Actions and decisions by Defendant City's policymaking agents including, but not limited to, the Policymaker Defendants named above;

   c.   Customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, Defendant Adams and Defendant Sewell, and other policymaking officials;

   d.   Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

92.     Accordingly, Plaintiff is entitled to the damages requested in this Complaint.

## SIXTH CLAIM FOR RELIEF

### Failure to Train and/or Supervise
***Against Defendants City, Adams, Sewell, and Supervisor Does Pursuant to 42 U.S.C. § 1983
and Monell v. Department of Social Services, 436 U.S. 658 (1978)***

93.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

94.     Defendant City, and its agents Defendants Adams and Sewell, failed to train and supervise the Defendant NYPD Members.

95. All individual Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Marcial's injuries.

96. Defendants knew or should have known that Defendant NYPD Members were likely to violate the constitutional rights of individuals in their custody.

97. Defendants know that NYPD Members are certain to regularly encounter situations such as those described herein—including the police approach and/or arrest and/or search of civilians—through the course of their employment.

98. Defendants knew that there is a history of wrongful conduct in these scenarios by NYPD Members.

99. Defendants also knew that individual NYPD Defendants have a documented history of adverse credibility findings and/or abusive conduct against individuals they encountered during their employment.

100. Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations, coerced confessions, and physical and emotional injuries.

101. Nevertheless, Defendants failed to train its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

102. By failing to train and supervise Defendant NYPD Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by NYPD members' conduct absent adequate training and supervision.

103. The harms suffered by Plaintiff are the direct result of Defendants' failures.

## SEVENTH CLAIM FOR RELIEF

**Negligent Screening, Hiring, and Retention**
***Against Defendants City, Adams, Sewell, and Supervisor Does Pursuant to <u>42 U.S.C. § 1983</u>
and <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978)***

104.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

105.     All Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Marcial' injuries.

106.     Defendant City and its agents Defendants Adams and Sewell knew that the individual Defendants had a propensity for the conduct giving rise to Mr. Marcial's injuries.

107.     Indeed, Defendant Galindo-Sanchez is the subject of six (6) substantiated Civilian Complaint Review Board investigations, at least one of which involves findings that this Defendant engaged in the impermissible and abusive "frisk" following a traffic stop.

108.     Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm.

109.     Such documented history of Defendants abusing their authority and/or otherwise causing harm to individuals subjected to interactions with police renders Defendants' conduct both predictable to and preventable by policymaker Defendants.

110.     Rather than removing or disciplining NYPD members meaningfully to ensure their future compliance with the law, and signaling that such conduct would not be tolerated if engaged in by other NYPD members, policymaker Defendants have continued to employ and empower such NYPD members to continue inflicting predictable harm on individuals they interact with, including Plaintiff.

111.     Such conduct is so foreseeable as to rise to the level of deliberate indifference.

## EIGHTH CLAIM FOR RELIEF

**Breach of Duty to Protect and Failure to Intervene**
***Against All Defendants Pursuant to 42 U.S.C. § 1983***

112.　Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

113.　The Defendant City, by its agents, had a special duty to Plaintiff and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiff.

114.　Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

115.　At no time did any Defendants intervene in the deficient conduct of their colleagues or otherwise fulfil their specialized duty to protect Mr. Marcial.

116.　Defendant City and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

## NINTH CLAIM FOR RELIEF

**Equal Protection Violations**
***Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Protected Under the Fourteenth Amendment to the United States Constitution***

117.　Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

118.　As discussed elsewhere herein, Defendants City, Adams, and Sewell, designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining Plaintiff thus subjected Plaintiff to the above-described violations of Plaintiff's Equal Protection rights.

119.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

120.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TENTH CLAIM FOR RELIEF

### Conspiracy
### *Against NYPD Defendants Pursuant to 42 U.S.C. § 1985(3)*

121.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

122.    Through the conduct described and complained of herein, Defendants conspired to deprive Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws.

123.    Defendants acted in furtherance of this conspiracy against Plaintiff, and as a result of this conduct, Plaintiff was injured in his person and property and deprived of his constitutional and civil rights.

## ELEVENTH CLAIM FOR RELIEF

### Failure to Prevent Civil Rights Violations
### *Against NYPD Defendants Pursuant to 42 U.S.C. § 1986*

124.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

125.    Defendants, including individual NYPD Defendants, had knowledge that the wrongs conspired to be done against Plaintiff in violation of 42 U.S.C. § 1985 were to be committed and had the power to prevent and/or aid in preventing the commission of this conduct.

126.    Defendants neglected and/or refused to prevent the commission of this conduct and Plaintiff sustained harm and/or the exacerbation of harm and the deprivation of his rights as a result of this failure.

127.    Defendants are liable for all damages caused by the conspiratorial conduct they failed to prevent despite possessing the power to do so.

## TWELFTH CLAIM FOR RELIEF

### Violations of New York State Law
***Pursuant to the New York State Constitution and New York State Common Law***

128.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

129.    As a result of the conduct described herein, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### I.    *Respondent Superior*

130.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, cloaked with and/or invoking state power and/or authority.

131.    As a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

### II.    Assault and Battery

132.    Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

133.    Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

134.    Defendants did thereby inflict assault and battery upon Plaintiff.

### III. Violations of the New York State Constitution

135.    Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I §§ 11 (equal protection) and 12 (security against unreasonable searches and seizures) of the New York State Constitution. A damages remedy here is necessary to effectuate the purposes of Article I, §§ 11 and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

### IV.  Fabrication of Evidence

136.    Defendants, including Defendant Galindo-Sanchez and NYPD Defendants # 1 – 5, were investigating officials in this matter. Defendants knowingly fabricated evidence likely to influence a jury and forwarded this information to prosecutors.

137.    As a result of this fabrication, Plaintiff suffered deprivations of his life, liberty, and/or property and suffered significant injuries.

138.    Plaintiff's liberty deprivations include, *inter alia,* Plaintiff's detention in the NYPD's custody for approximately 24 hours prior to his arraignment, including in the precinct and at Central Booking and Plaintiff's mandated return to Court on approximately during the pendency of the criminal case against him until it was terminated in his favor.

### V.    Negligence

139.    Defendants owed a special duty to Plaintiff and breached this duty through their conduct described herein. Defendants' negligence in fulfilling their duty to Plaintiff resulted in Plaintiff's injuries and they are liable for this conduct and its resulting injuries.

## VI.      Negligent Infliction of Emotional Distress

140.     Defendants owed Plaintiff a duty of care and breached this duty of care through the conduct described herein, directly causing the emotional harms, including post-traumatic stress, insomnia, depression, and ongoing anxiety and fear.

## VII.      Intentional Infliction of Emotional Distress

141.     By the actions described above, Defendants engaged in extreme and outrageous conduct.

142.     Defendants intentionally caused Defendant's severe emotional distress and/or acted with a disregard for the substantial probability of causing the same.

143.     Plaintiff suffered severe emotional distress as the direct result of Defendants' conduct, which was outside the bounds of decency.

## VIII.      Excessive Detention

144.     By the actions described above, the Defendants described above did excessively detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so.

145.     In addition to the false nature of Plaintiff's initial detention by Defendants, Defendants further held Mr. Marcial in custody for an excessive period of time for the purpose of gathering additional evidence to justify Plaintiff's arrest and/or due to by ill will on the part of Defendants against Plaintiff and/or to cause delay for delay's sake.

146.     Plaintiff conscious of his confinement by Defendants, and this confinement was undertaken without his consent.

## IX.      Negligent Hiring, Training, and Supervision

147.     Upon information and belief, Defendant City supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

148. At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City. Defendant City should have known that Defendant NYPD Members had a propensity for the conduct causing Plaintiff's injuries.

149. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### X. Denial and/or Delay of Medical Care
***Pursuant to <u>New York State Civil Rights Law Article 3 § 28</u> (<u>N.Y. Civ. § 28</u>) as well as New York State Common and Constitutional Law***

150. At the time of the incident giving rise to the instant Complaint, Plaintiff was in the custody of Defendants, who are each a "police officer, peace officer or other law enforcement representative or entity" within the meaning of the <u>New York State Civil Rights Law</u>.

151. As such, Defendants had a duty to provide assistance and treatment for Plaintiff's medical needs.

152. Defendants abdicated their duties under this statute and failed to provide and/or delayed in providing medical care to Plaintiff.

153. Such denial and/or delay was unreasonable and caused delay in Plaintiff's treatment for a serious physical and/or emotional injury.

154. This failure resulted in serious injury and/or the exacerbation of Plaintiff's injuries for which Defendants are liable.

### XI. False Arrest

155. By the actions described above, the police officials described above did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so.

156. Plaintiff was conscious of the confinement and it was without his consent.

157.    Defendants levied false allegations against Mr. Marcial to wrongfully seize, detain, and falsely arrest him.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York as follows:

i.     Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.    Actual damages in an amount to be determined at trial against the City of New York;

iii.   Policy change;

iv.    Statutory attorney's fees, disbursements, and costs of the action pursuant to, inter alia, 42 U.S.C. §1988, the New York City Admin. Code, Ch. 8, Title 8, and New York State common law; and

v.     Such other relief as the Court deems just and proper.


Dated:      Brooklyn, New York
            April 26, 2024


                          KAISHIAN & MORTAZAVI LLC
                          Attorneys for Plaintiff

                          By: _____
                          MARYANNE K. KAISHIAN, ESQ.
                          55 Washington Street, Ste. 508
                          Brooklyn, New York 11201
                          T: (347) 662-2421
                          E: mk@kaishianlaw.com

## **PLAINTIFF VERIFICATION**

I, NICHOLAS MARCIAL, affirm the following to be true under the penalties of perjury:

1.      I am over 18 years of age.

2.      I am the Plaintiff in the above action, *Marcial v City of New York, et al.*

3.      I have read the annexed Complaint, dated APRIL 26, 2024, and know the contents thereof, and the same are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true.

Dated: 4-26-24                                    Signed: Nicholas Marcial

                                                                        NICHOLAS MARCIAL

---

STATE OF NEW YORK          )

                                                SS.

COUNTY OF KINGS            )

On the 26th day of April in the year 2024 before me, the undersigned notary public, personally appeared Nicholas Marcial personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

> MARYANNE K KAISHIAN
> NOTARY PUBLIC, STATE OF NEW YORK
> NO. 02KA0015799
> QUALIFIED IN KINGS COUNTY
> MY COMMISSION EXPIRES NOV. 7, 2027

Notary Public